<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

AGUSTIN GARCIA,       :
a/k/a Augustin Garcia,   :
                      :   Civil Action No. 08-5652 (JAP)
        Plaintiff,   :
                      :
        v.           :   **OPINION**
                      :
NEW JERSEY STATE PRISON, :
et al.,               :
                      :
        Defendants.  :

**APPEARANCES:**

Plaintiff <u>pro se</u>
Augustin Garcia
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

**PISANO,** District Judge

    Plaintiff Augustin Garcia, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he suffers from various serious medical conditions, for which he has not received proper treatment.   Specifically, those conditions include: (1) a serious hearing deficit, for which he has not received appropriate treatment or housing assignment, (2) cataracts, for which he did not receive prescribed medications following surgery, resulting in permanent vision damage, (3) a painful rash for which he received only ineffective over-the-counter medications, (4) overdose of medication Acyclovir, which caused a reaction of overall body rash followed by diagnosis of a cardiac condition, (5) failure to clearly diagnose or treat his cardiac condition, (6) refusal to treat neurological damage following a head injury,[1] (7) refusal to provide prescribed medication Lopid for high triglyceride levels.

---

[1] This is Plaintiff's third complaint challenging failure to treat neurological symptoms following a 1999 head injury.  See Garcia v. NJSP, 05-cv-3159 (D.N.J.); Garcia v. Bergen County Jail, 02-cv-2807 (D.N.J.).  This Court construes this Complaint as asserting claims with respect to symptoms arising only after the period covered by the previous complaints.

In addition, Plaintiff alleges that the defendants have engaged in "obstruction of justice" by (1) refusing to copy certain documents in connection with Plaintiff's second state post-conviction relief proceeding, (2) delaying delivery of a new trial motion.  The Court construes these allegations as attempts to assert claims for denial of the constitutional right of access to courts.

Plaintiff names as defendants New Jersey State Prison, Administrator Michelle Ricci, Commissioner George Hayman, Saint Francis Hospital, CMS, NJSP Medical Director John Doe, Education Supervisor Thomas Dechan, Acting Chief of Custody William Moleins, NJSP Supervisor George Hanuschik, and Business Manager Peter F. Ronaghan.  Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

3

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

4

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 10(b) provides:

> A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  ...  If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
> (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; and
> (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added). See, e.g., Pruden v. SCI Camp Hill, 252

Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th

Cir. 2007).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat</u> <u>superior</u>. <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat</u> <u>superior</u>. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).[2]

---

[2]Because the claims against Administrator Michelle Ricci and Commissioner George Hayman appear to be based solely upon an untenable theory of vicarious liability, they will be dismissed without prejudice.

7

IV.   ANALYSIS

A.   Claims Against New Jersey State Prison

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money

8

damages are persons within the meaning of § 1983.  <u>Will v.</u>
<u>Michigan Dept. of State Police</u>, 491 U.S. 58, 64, 70-71 and n.10
(1989); <u>Grabow v. Southern State Correctional Facility</u>, 726
F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of
Corrections is not a person under § 1983).

For the foregoing reasons, all claims against the New Jersey
State Prison will be dismissed with prejudice.

B.   <u>Medical Care Claims</u>

The Eighth Amendment to the United States Constitution,
applicable to the individual states through the Fourteenth
Amendment, prohibits the states from inflicting "cruel and
unusual punishments" on those convicted of crimes.  <u>Rhodes v.</u>
<u>Chapman</u>, 452 U.S. 337, 344-46 (1981).  This proscription against
cruel and unusual punishment requires that prison officials
provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>,
429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable
claim for a violation of his right to adequate medical care, an
inmate must allege: (1) a serious medical need; and (2) behavior
on the part of prison officials that constitutes deliberate
indifference to that need.  <u>Id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to

medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional

10

judgment.  Implicit in this deference to prison medical
authorities is the assumption that such informed judgment has, in
fact, been made." Inmates of Allegheny County Jail v. Pierce,
612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation
omitted).  Even if a doctor's judgment concerning the proper
course of a prisoner's treatment ultimately is shown to be
mistaken, at most what would be proved is medical malpractice and
not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06;
White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for
medical treatment, however, and such denial exposes the inmate
'to undue suffering or the threat of tangible residual injury,'
deliberate indifference is manifest.  Similarly, where 'knowledge
of the need for medical care [is accompanied by the] ...
intentional refusal to provide that care,' the deliberate
indifference standard has been met.  ... Finally, deliberate
indifference is demonstrated '[w]hen ... prison authorities
prevent an inmate from receiving recommended treatment for
serious medical needs or deny access to a physician capable of
evaluating the need for such treatment." Monmouth County Corr.
Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).
"Short of absolute denial, 'if necessary medical treatment [i]s
... delayed for non-medical reasons, a case of deliberate
indifference has been made out." Id. (citations omitted).

"Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'"  Id. at 347 (citation omitted).

Plaintiff's Eighth Amendment medical-care claims may proceed as against Defendants CMS and Medical Director John Doe only.

B.    Access to Courts Claims

Plaintiff alleges delays in mailing certain briefs and motions to state court in connection with post-trial matters related to his convictions.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413–14 (1989).  See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

12

In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that <u>Bounds</u>] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  ...  [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the

13

prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel. See e.g., Bounds, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); Rauso v. Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting

14

cases); <u>Pressley v. Johnson</u>, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." <u>See Lewis</u>, 518 U.S. at 348-55 and n.3 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, it appears that Plaintiff seeks to assert a claim for violation of his right of access to the courts as against Defendants Thomas Dechan, William Moleins, and Peter F. Ronaghan. The Court deduces this only because these defendants are not alleged to have any responsibilities with respect to Plaintiff's medical care.  Plaintiff has not, however, alleged facts sufficient to give fair notice of the grounds on which claims against these defendants rest.  Nor has he alleged facts establishing the requisite "actual injury."  In addition, to the extent Plaintiff seeks to assert access-to-courts claims against these defendants, such claims are not appropriate for joinder with the Eighth Amendment medical-care claims.  The claims against these diverse sets of defendants do not arise out of the same series of transactions and there are no issues of fact or law that are common to these different sets of claims and defendants.  <u>See</u> Fed.R.Civ.P. Rule 20(a)(2).

Accordingly, the access-to-courts claim will be severed from this action.  The Clerk will be directed to open a new civil

action for those claims.  However, because the Complaint otherwise fails to state a claim for denial of the constitutional right of access to the courts, the claim will be dismissed without prejudice as against Defendants Thomas Dechan, William Moleins, and Peter F. Ronaghan, and Plaintiff will be granted leave to file an amended complaint.  Should Plaintiff desire to proceed with that new civil action, he will be required to pay the $350 filing fee or file an application for leave to proceed in forma pauperis.  This Court expresses no opinion as to the viability of any such access-to-courts claim.

C.    Claims Against Food Services Supervisor George Hanuschik

Plaintiff fails to allege any facts suggesting a claim against Defendant George Hanuschik, described in the Complaint as the Food Services Supervisor.  Accordingly, all claims against this Defendant will be dismissed without prejudice.

D.    Pendent State Claims

Plaintiff has named as a defendant Saint Francis Hospital, an entity that is not a state actor subject to liability under § 1983.  Plaintiff alleges that he received surgery at Saint Francis Hospital for his cataracts, but fails to allege facts stating a claim for state-law medical malpractice as against Saint Francis Hospital.  To the contrary, Plaintiff alleges that personnel at Saint Francis Hospital gave appropriate discharge instructions but that medical staff at New Jersey State Prison

16

failed to follow those instructions, specifically, provision of certain medications.  Accordingly, the state-law medical malpractice claim will be dismissed without prejudice.

### V.   CONCLUSION

For the reasons set forth above, the Eighth Amendment medical-care claim may proceed as against Defendants CMS and Medical Director John Doe.  All other claims will be dismissed. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a state-law claim for medical malpractice, or otherwise overcome deficiencies noted herein with respect to the Eighth Amendment medical-care claims, the Court will grant Plaintiff leave to file an amended complaint.[3]  An appropriate order follows.

/s/Joel A. Pisano
Joel A. Pisano
United States District Judge

Dated: April 7, 2009

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

17