**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
AGUSTIN GARCIA,                    :
a/k/a AUGUSTIN GARCIA,             :
                                   :   Civil Action No. 09-1642 (JAP)
             Plaintiff,            :
                                   :
         v.                        :   OPINION
                                   :
THOMAS DECHAN, et al.,             :
                                   :
             Defendants.           :
```

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Agustin Garcia
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

**PISANO**, District Judge

　　　Plaintiff Agustin Garcia, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Amended Complaint.

At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  <u>BACKGROUND</u>

In November 2008, Plaintiff submitted to this Court a civil rights complaint, <u>see</u> <u>Garcia v. New Jersey State Prison</u>, Civil No. 08-5652 (D.N.J.), primarily asserting claims regarding his medical care, but also attempting to assert a claim for denial of his right of access to the courts, specifically with respect to (1) delaying delivery of his new trial motion, and (2) refusing to copy certain documents in connection with Plaintiff's second state petition for post-conviction relief.  By Opinion and Order [2, 3] entered April 7, 2009, this Court analyzed the pleading requirements for an access-to-courts claim, held that the allegations of that Complaint were insufficient to state a claim for violation of the right of access to the courts, severed the access-to-courts claims and directed the opening of this action for the litigation of such claims, and granted Plaintiff leave to file an amended complaint.  This matter is again before this Court pursuant to the filing of the Amended Complaint in this action, accompanied by several hundred pages of attachments.

The following factual allegations are taken from Plaintiff's Amended Complaint, and the attachments thereto, and are accepted as true for purposes of this review.

Plaintiff was convicted, pursuant to a jury trial in the Superior Court of New Jersey, Law Division, Bergen County, of murder and various related offenses.  On February 1, 2002, Plaintiff was sentenced to a term of life imprisonment, with a 30-year parole disqualifier.

The following pertinent facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division:

> Defendant shot and killed Gladys Ricart in her residence on her wedding day, dressed in her wedding dress, and flanked by her bridesmaids who along with others, witnessed the murder.  The actual killing was captured by the wedding videographer who was filming the events of the day. ...
>
> Sometime after 3:00 p.m., Searfoss, Sacin, and two of the groomsmen, Antonio Caban and Raymundo Fabian, all of whom were standing outside of Gladys' house, saw defendant drive by and then return and park.  Searfoss' housemate, Pat Pollio, went inside to warn family members that defendant was there.
>
> Gladys' brother Juan immediately went outside and approached defendant's car.  Juan asked defendant what he was looking for and defendant responded that he was invited and began to walk quickly toward the house. Aware that defendant had not been invited to the wedding, Juan followed him up to Gladys' front door, which was closed and locked. ...  Juan noticed that defendant had a brown briefcase hanging on his shoulder and, concerned that defendant might be carrying a gun as he usually did, tried to touch the case, but defendant pushed him away with his elbow.  Juan denied that he thereafter struck or punched defendant.

Davis, who had been watching defendant's progress toward the house from the foyer, opened the door in response to defendant's repeated knocking, and defendant walked in followed closely by Juan.  Juan recalled that Davis made no attempt to keep defendant out or to hit him once he was inside, and that no one threatened defendant.  Davis confirmed that he never hit or otherwise confronted defendant.  According to Davis, as defendant walked in, he "moved" Davis over to the side, but there was no physical scuffle between the two of them.  He insisted that Juan, likewise, did not grab defendant as he followed defendant into the house.

Defendant immediately stepped into the living room where there were several children present, ... . Suddenly defendant pulled a gun out of his brown briefcase and started shooting at Gladys, firing the gun twice.  Juan tried to grab defendant but defendant pushed him, brandished the gun at the room, and then shot at Gladys two times, causing her to fall down over the sofa.  Defendant shot Gladys one final time, at very close range, behind her right ear.  In all, five shots were fired. ...

At trial, a portion of the wedding videographer's tape, which showed the actual shooting, was played for the jury.

Defendant testified in his own defense. ...

Defendant acknowledged that he had placed an illegally purchased gun in his briefcase before leaving home. ...

[Defendant testified that:]

Defendant drove by Gladys' house and noticed limousines parked out front and formally attired people milling about.  He drove by again and concluded that Gladys was hosting a party for her mother.  He started to drive away, but then, annoyed that Gladys had lied to and excluded him, turned around and returned to the house to confront her.  Defendant maintained that he had no idea that Gladys was getting married.

As defendant got out of his car, Juan came up to him and asked whether he was invited and he responded that he was "always invited to [his] house."  Juan

4

followed him as he went up to the front door but did
not touch him.  After Davis opened the door, however,
and he entered the house, Juan pulled his left arm, and
he fell forward and hit Davis.

Defendant claimed that Davis then pushed him and
he ended up in the living room where he spotted Gladys.
He was totally confused and asked what was going on.
Davis then hit him on the right side of his forehead
and he fell into a wall.  Believing that many people,
including Juan, were attacking him, he reached for his
gun to protect himself.  Juan then grabbed him and they
started wrestling.  Defendant recalled that he was
blacking out and falling when he saw a white cloud over
him and then a flash of light.  Juan then yelled, "you
killed my sister," three times and he replied, "I want
to kill myself."

(Opinion of Superior Court, Appellate Division, May 11, 2004, at

3, 8-10, 13-14, attached as pages Da21 to Da66 of Att. K-1 to

Amended Complaint.)

On May 11, 2004, the Superior Court of New Jersey, Appellate

Division, affirmed Plaintiff's conviction and sentence for murder

and unlawful possession of a weapon, reversed Plaintiff's

convictions for endangering the welfare of a child (two counts),

and remanded for entry of those acquittals in the judgment of

conviction along with corrections to delete certain VCCB and SNSF

penalties.  (Opinion of Appellate Division, May 11, 2004,

attached as pages Da21 to Da66 of Att. K-1 to Amended Complaint.)

Among other things, the Appellate Division determined that the

trial court properly barred defense counsel from referring to the

alleged altercation at the entry as proof of provocation, for

purposes of passion/provocation manslaughter, and properly

permitted discussion of the altercation with respect to the other lesser-included offenses of aggravated and reckless manslaughter. In addition, the Appellate Division upheld the trial court's decision to admit the video, and noted that Plaintiff's argument that the jury was not properly advised that certain parts of the video had no sound or had otherwise been modified was "without merit," as the officer who edited the video testified as to the nature of the edits.

> Whether or not defendant was assaulted prior to the shooting and the immediacy of the shooting were key issues in this case where the jury had the lesser offenses of manslaughter to consider.  While it is true that several witnesses testified to the lack of any commotion prior to the shooting and the immediacy of the shooting following defendant's entry into the house, the video constituted objective proof of the timing and sequence of what occurred.

(Opinion of Appellate Division at 29-30.)  The Amended Complaint does not reflect whether Plaintiff pursued any further direct appeals of his conviction.

Thereafter, Plaintiff filed a first petition for post-conviction relief in the trial court.  Plaintiff was represented by counsel in that proceeding.  Nevertheless, he did submit a <u>pro se</u> brief in addition to the brief submitted by counsel. Plaintiff alleges, in the Amended Complaint, that he sought to file a <u>pro se</u> reply brief, but the defendants' refused to copy or mail the brief, compelling Plaintiff's family to hand-deliver the brief, which was not received by the trial court until one week

6

after that court had rendered its ruling.[1]   By Order entered May 4, 2007, following a non-evidentiary hearing of the same date, the trial court denied relief.[2]   (Atts. K-1 and N to Am. Compl.) Plaintiff moved for reconsideration, apparently unsuccessfully. In connection with the motion for reconsideration, Plaintiff submitted an appendix of approximately 484 pages.  (Atts. D-0 through D-4 to Am. Compl.  (Volume I of the five-volume appendix is not attached to the Amended Complaint.))

Plaintiff alleges that, during the May 4 non-evidentiary hearing on the first PCR petition, the trial judge authorized the filing of a new trial motion based on newly-discovered evidence.[3]

---

[1] This allegation is contradicted in Plaintiff's motion for reconsideration, attached as Att. D-0 to the Amended Complaint, in which Plaintiff states to the trial court, "PCR Counsel was provided Movant's pro se Traverse Brief, dated 21 March 2007 for filing with the court.  However, inexplicably PCR Counsel failed to mail and serve that traverse."  "PCR Counsel neither filed the pro se draft Traverse.  Movant has been informed that his family has post-PCR hearing filed that draft Traverse with this Court." (Att. D-0 at 9, 11.)

[2] In the Order, the court indicated that it was denying relief for reasons stated on the record.  Plaintiff has not attached a copy of that portion of the record, nor has he characterized the PCR court's stated reasoning.

[3] It appears from the attachments to the Amended Complaint that the basis for the motion for new trial was newly-developed expert evidence with respect to alleged editing of the wedding videotape admitted at trial.  Plaintiff alleged that the editing at trial had omitted a 26-second span of tape that would have reflected audio evidence of the alleged scuffle when Plaintiff entered the victim's home, evidence allegedly relevant to the jury's consideration of the lesser-included offenses of aggravated and reckless manslaughter.  In addition, there was apparently a disagreement between the prosecution and Plaintiff

Plaintiff alleges that he delivered it to an unspecified "defendant" on May 7, 2007, but that it was not mailed until May 24, 2007. It was received by the Court on May 25, 2007. Plaintiff alleges that this late delivery prevented a ruling on the motion before the deadline for filing a notice of appeal from the denial of the first PCR petition. Plaintiff does not explain why it was necessary that the trial court rule on the motion before Plaintiff filed his notice of appeal.

Plaintiff appealed the denial of PCR relief alleging, <u>inter alia</u>, that he had not received effective assistance of counsel from his PCR counsel in the trial court. Plaintiff was represented in the appeal by new assigned counsel. (Att. E-1 to Am. Compl.) It appears that the appeal remains pending. Plaintiff alleges that certain defendants have refused to copy certain filings that Plaintiff wished to make in connection with the appeal.

While the appeal of Plaintiff's first PCR petition was pending, on July 8, 2008, Defendant Peter Ronaghan issued a memorandum to Thomas Dechan, regarding "Outstanding Inmate Legal Copy Loans" of various prisoners, which indicated that Plaintiff owed $5,148.35 for copying as of July 2008, and stating that, for

---

with respect to the translation and transcription of the videotape. Plaintiff does not describe the specific alleged differences in the translations or their significance to the case.

all listed prisoners, "any additional copying requests should be restricted to a minimum."  Apparently in response to this memorandum, Defendant Dechan, on July 11, 2008, issued a memorandum to Defendant Stribling, attaching the list of inmates with outstanding copy request debts, and setting forth the following directive:

> I am directing you to review any copy requests made by these inmates.  The Department of Corrections will assume the expense of copying for indigent inmates only if the legal material is directly related to pending litigation, attacks the indigent inmates sentence, challenges the conditions of confinement such as civil rights actions or writs of habeas corpus.
>
> These inmates may also be advised that they may duplicate by typing when practical.  You are to advise copy room clerks that no material is to be photocopie4d for these inmates unless you have approved it.

(Am. Compl. Atts. Nos. 7, 7-B.)

While the appeal of his first PCR petition was pending before the Appellate Division, Plaintiff sought to file a second PCR petition in the trial court.  Plaintiff characterizes the claims in the second PCR petition as follows:

> Point I
> The motion permitting the verified protective second petition for post conviction relief to be held in abeyance pending the return of jurisdiction to this court, should be granted in all respects.
>
> Point II
> Excusable neglect exists for filing the instant petition for post conviction relief beyond the five year limit.
>
> Point III
> The representation by PCR counsel constituted a "complete denial of counsel."

Point IV
Defendant was entitled to an evidentiary hearing on his post conviction relief claims.

Point V
The motion for reconsideration of the denial should have been granted.

Plaintiff alleges that prison personnel have refused to copy the second PCR petition and exhibits, including transcripts, insisting on a letter from Plaintiff's counsel that the copies are necessary and requesting that Plaintiff make an effort to retrieve from the trial court copies of prior filings, to reduce the amount of copying necessary. Plaintiff alleges that this second PCR petition is a new matter that "is being served on the public defender for assignment of counsel." Thus, Plaintiff alleges, he cannot provide the requested letter from counsel, who has not yet been appointed. It appears that Plaintiff took the position with defendants that his entire brief and exhibits, including copies of trial transcripts, must be copied with the initial filing, even before assignment of counsel.

Finally, Plaintiff alleges that, from January through April 2009, the defendants refused to copy briefs and other documents in pending civil matters challenging the conditions of his confinement. Plaintiff does not elaborate on the nature of the claims in those actions, the status of the litigation, or the nature of the documents he sought to copy.

10

Plaintiff names as defendants Supervisor of Education Thomas Dechan, Acting Chief of Custody William Moleins, Business Manager Peter F. Ronaghan, Administrator Michelle Ricci, Supervisor of Education D.H. Finlay, Library Clerk Mildred Stribling, and Library Supervisor Deniece Gray.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

11

325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court then applied these general standards to a Sherman Act conspiracy claim.

12

In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ...  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."  A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

13

Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal
conclusion couched as a factual allegation."  Id. at 1950.  Thus,
"a court considering a motion to dismiss can choose to begin by

14

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."   <u>Id.</u>

>Therefore, after <u>Iqbal</u>, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 2009 WL 2501662, 5 (3d Cir. August 18,

2009) (citations omitted).

>Rule 10(b) of the Federal Rules of Civil Procedure provides:

>A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

>Rule 20(a)(2) controls the permissive joinder of defendants

in pro se prisoner actions as well as other civil actions.

>Persons ... may be joined in one action as defendants
if:
>(A) any right to relief is asserted against them
jointly, severally, or in the alternative with respect

> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; <u>and</u>
>      (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the

16

Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

17

The claim against Defendant William Moleins appears to be based solely upon an untenable theory of vicarious liability, and will be dismissed with prejudice.

IV.   <u>ANALYSIS</u>

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that

18

Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated,

"[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel. See e.g., Bounds, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); Rauso v. Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

20

A.   <u>State Court Challenges to Conditions of Confinement</u>

Plaintiff alleges that the defendants, or some of them, have refused to copy briefs and/or other documents he wishes to submit in pending state court cases challenging his conditions of confinement.  These allegations fail to state a claim for denial of access to the courts.

As the Court of Appeals for the Third Circuit has explained, "[a] plaintiff typically cannot recover for any cover-ups or discovery abuses after an action has been filed inasmuch as the trial court can deal with such situations in the ongoing action....  Thus, only <u>prefiling</u> conduct that either prevents a plaintiff from filing suit or renders the plaintiff's access to the court ineffective or meaningless constitutes a constitutional violation." <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 511 (3d Cir. 2003) (emphasis added).  <u>See also</u> <u>Wiggins v. Logan</u>, 2009 WL 2942710, *2-3 (3d Cir. Sept. 15, 2009); <u>Swekel v. City of River Rouge</u>, 119 F.3d 1259, 1263 (6th Cir. 1997) ("When the abuse transpires post-filing, the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable.").

Accordingly, this claim will be dismissed with prejudice.

B.   <u>First State PCR Petition and Appeal</u>

Plaintiff alleges that the defendants, or some of them, have refused to copy certain submissions he wished to make in both the

21

trial and appellate courts with respect to his first PCR petition.

Once again, Plaintiff does not allege that the defendants refused to permit him to initiate the action or appeal.  Thus, the state trial and appellate courts were in a position to deal with any abuses during those proceedings.  Moreover, it appears that the appeal of the first PCR petition is still pending, thus precluding any finding that Plaintiff has been prejudiced with respect to that proceeding.  Most importantly, however, Plaintiff was represented by counsel in both those proceedings, thus fulfilling the defendants' obligation to provide him with access to the courts with respect to that first PCR petition.

For all the foregoing reasons, the claim with respect to the first PCR petition and its appeal will be dismissed with prejudice.

C.   Second State PCR Petition

Plaintiff alleges that the defendants, or some of them, refused to copy his second state PCR petition and appendices. Thus, Plaintiff has pleaded facts showing that certain defendants prevented him from filing an action challenging his conviction, a type of action protected by the constitutional right of access to the courts.  Nevertheless, Plaintiff has failed to plead facts showing "injury."  Plaintiff has failed to plead facts showing that his second PCR petition was arguably actionable.

22

As an initial matter, Plaintiff has admitted that the second PCR petition was untimely under state law.  See N.J.Ct.R. 3:22-12 (establishing a five-year limitations period unless the prisoner "alleges facts showing that the delay beyond said time was due to defendant's excusable neglect").  The five-year limitations period for filing a state PCR petition expired for Plaintiff on February 1, 2007.  Plaintiff did not seek to file this second PCR petition until some time after May 25, 2007.  Here, although Plaintiff alleged that there was "excusable neglect," that is a legal conclusion.  Plaintiff has failed to allege any <u>facts</u> showing excusable neglect.

In addition, the claims Plaintiff sought to assert in the second PCR petition -- regarding the adequacy of his counsel during the first PCR petition, the merits of his motion for reconsideration, his entitlement to an evidentiary hearing during the first PCR petition -- were already presented to the trial court in the motion for reconsideration following the denial of the first PCR petition and in the appeal of the first PCR petition.

For all the foregoing reasons, Plaintiff has failed to plead <u>facts</u> showing that the second PCR petition was not frivolous. Because Plaintiff has previously been granted an opportunity to amend with respect to this claim, this claim also will be dismissed with prejudice and without leave to amend further.

23

This is a determination that Plaintiff has failed to <u>plead</u> injury sufficiently to state a § 1983 claim; this Court expresses no opinion as to the merits of the claims asserted in Plaintiff's challenges to his conviction.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), for failure to state a claim.  An appropriate order follows.


<u>/s/ Joel A. Pisano</u>
Joel A. Pisano
United States District Judge

Dated:  November 2, 2009

24